**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:14-CR-235** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **DOUGQUAN CULBRETH (1),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Dougquan Culbreth, through appointed counsel, moves for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Culbreth asks the court to reduce his sentence to time served based on his medical condition and his concern regarding the spread of the COVID-19 virus[1] at the Fort Dix Federal Correctional Institution ("FCI Fort Dix") where he is currently incarcerated. The government opposes compassionate release. For the reasons that follow, we will deny Culbreth's motion.

## I.   Factual Background & Procedural History

On September 10, 2014, a grand jury returned an indictment charging Culbreth with conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 (Count I) and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a) (Count II). (Doc. 1). On June 29, 2015, the government filed a

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it,* WORLD HEALTH ORG., https://www. who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

superseding information charging Culbreth with one count of unlawful distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  (Doc. 33).  Culbreth pled guilty to the superseding information.  (Docs. 35, 39).

The United States Probation Office prepared a presentence report.  Because Culbreth is a career offender convicted of several controlled substances offenses, (PSR ¶¶ 21, 25, 27), the presentence report calculated a Guidelines imprisonment range of 151 to 188 months, (id. ¶ 56).  After adopting the Guidelines range from the presentence report and considering the 18 U.S.C. § 3553(a) factors, the court imposed a sentence of 151 months' imprisonment.  (Docs. 52, 53).  Culbreth did not appeal his conviction or sentence.  He is currently housed at FCI Fort Dix, with a projected release date of December 28, 2026.  See *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "72320-067") (last visited Aug. 3, 2020).

Culbreth filed a *pro se* motion for compassionate release on May 8.  (Doc. 54).  That same day, we appointed the Federal Public Defender to determine whether Culbreth may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf.  (Doc. 55).  Appointed counsel filed a brief in support of Culbreth's *pro se* motion on June 17, (Doc. 56), and we promptly implemented an expedited briefing schedule, (Doc. 57).  Culbreth's motion is fully briefed and ripe for review.  (See Docs. 56, 61, 62).

## II.   Discussion

Culbreth asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub.

L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

### A.    Exhaustion of Administrative Remedies

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion.  Id.  In his opening brief, Culbreth claims that he exhausted administrative remedies by filing a request with the warden of his facility that went unanswered.  (Doc. 56 at 2; Doc. 56-2).  The government retorts that we cannot address the merits of the instant motion because there is no record of Culbreth ever requesting relief from the warden.  (See Doc. 61 at 9-14).

After the parties submitted their briefs in support of and in opposition to the motion for compassionate release, we issued a show cause order directing the parties to support their respective positions regarding exhaustion.  (Doc. 63). Culbreth asserts via a declaration that on May 27, 2020—before appointed counsel filed a brief in support of his motion—he wrote the warden at FCI Fort Dix and asked the warden to consider seeking compassionate release on his behalf, but never received a response within the 30-day statutory period.  (Doc. 65-1).  For its

part, the government submits a declaration by a BOP attorney attesting there is no record of Culbreth filing such a request. (Doc. 64). As is evidenced by the parties' filings, we have no conclusive evidentiary indication that Culbreth has fully exhausted administrative remedies as contemplated by Section 3582(c)(1)(A). See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); Petrossi, No. 1:17-CR-192, ___ F. Supp. 3d ___, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020).

We have previously held that judges cannot waive or excuse the statutory exhaustion requirement, so we must enforce it if invoked by the government. See Petrossi, 2020 WL 1865758, at *3-4. Relatedly, courts are divided on whether the requirement is jurisdictional in nature, such that neither the court nor any party may waive or excuse it. Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020) (nonjurisdictional); United States v. Johnson, No. 15-CR-125, ___ F. Supp. 3d ___, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020) (same); United States v. Nazer, No. 18-CR-00783-2, ___ F. Supp. 3d ___, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020) (same); United States v. Haney, No. 19-CR-541, ___ F. Supp. 3d ___, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (same), with United States v. Baye, No. 3:12-CR-00115-RCJ, ___ F. Supp. 3d ___, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020) (jurisdictional requirement); United States v. Johnson, No. CR RDB-14-0441, ___ F. Supp. 3d ___, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (same). Although we are inclined to agree with the government that there is an exhaustion problem

in this case, we need not conclusively resolve that question because Culbreth has

not shown that a reduction in sentence is warranted under Section 3582(c)(1)(A)(i).[2]

### B.     Extraordinary and Compelling Reasons

Culbreth contends that his medical condition and resulting vulnerability

to serious complications from COVID-19 establish extraordinary and compelling

reasons to grant compassionate release.  He asserts that he has several medical

conditions that place him at an increased risk of serious illness or even death from

COVID-19, and he argues that this risk is amplified by the increasing presence of

the COVID-19 virus within the facility where he is incarcerated.  (Doc. 56 at 4-5).

Congress delegated responsibility for defining "extraordinary and

compelling reasons" for compassionate release to the United States Sentencing

Commission.  See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of

the United States Sentencing Guidelines, the Commission identifies criteria for

determining eligibility for a sentence reduction.[3]  See U.S.S.G. § 1B1.13 cmt. n.1

(U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness

---

[2] Even if the statutory exhaustion requirement is jurisdictional—a question
we reserve judgment on—we may assume jurisdiction *arguendo* in reaching the
merits.  See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005) (citing,
*inter alia*, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and holding that when a
jurisdictional limitation has a "statutory provenance," rather than a constitutional
one, courts may assume jurisdiction *arguendo*).

[3] We recognize that this policy statement has not been amended since
passage of the First Step Act.  See United States v. Kelly, No. 3:13-CR-59, 2020 WL
2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-
103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to
observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer
controlling.  Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C.
2019)).

as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover." Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment. Id. at cmt. n.1(B).  The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above. Id. at cmt. n.1(D).

The BOP has also developed internal criteria for addressing prisoner requests for compassionate release.  Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Culbreth are those concerning prisoners with a "debilitated medical condition." See FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/ REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (Jan. 17, 2019).  The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." Id.  Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair;

or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria. Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions. In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).[4] Over the past few months, district courts in both the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for habeas relief or pretrial release. See Ndir v. Doll, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); D.M. v. Barr, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); United States

---

[4] The Third Circuit in Raia held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile. See Raia, 954 F.3d at 596-97. Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably dicta. We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

v. Anderson, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020)

(same in pretrial detention context).  In other words, something more is required.

Culbreth asserts that his medical condition combined with the presence of

the COVID-19 virus within his facility supplies the requisite "something more."

Culbreth reports current diagnoses of Type 2 diabetes mellitus, polyneuropathy,

obesity, and hypertension, for which he takes various medications.  (See generally

Doc. 59).  The Centers for Disease Control and Prevention ("CDC") recently

updated their guidance concerning who is at unique risk for severe illness from

COVID-19.  See Coronavirus Disease 2019 (COVID-19): People with Medical

Conditions, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/

coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last

updated July 30, 2020).  As it relates to Culbreth, the guidance states that obese

individuals and those with Type 2 diabetes mellitus "are at [an] increased risk of

severe illness from COVID-19."  Id.  Individuals with hypertension "might be at an

increased risk for severe illness from COVID-19."  Id.  The guidance does not

specifically address polyneuropathy, but it explains that those with certain

neurological conditions "might be at an increased risk for severe illness from

COVID-19."  See id.

Culbreth's counsel also argues that the recent "explosion of COVID-19 cases

in prisons across the country"—including at his facility—increases the risk that

Culbreth will contract the disease and further justifies immediate release.  (Doc. 56

at 5).  Tragically, counsel is correct regarding the nationwide increase in COVID-19

cases—BOP statistics establish that several federal prisons have experienced

8

outbreaks, and 108 prisoner deaths have been recorded to date.  See *COVID-19*

*Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (select

"Full breakdown and additional details") (last updated Aug. 4, 2020, 3:00 p.m.).

But nationwide figures are not representative of circumstances at individual

prisons.  As of this writing, the BOP reports no positive prisoners or staff members

at FCI Fort Dix, and 39 prisoners and 5 staff members have recovered after

previously testing positive.  See id.  And this is not for want of testing: 298 of 2,503

prisoners at FCI Fort Dix have been tested for the virus.  See id. (select "Learn

more about the data and view individual facility stats"); *Population Statistics*, Fed.

Bureau of Prisons, https://www.bop.gov/mobile/about/population_

statistics.jsp (last visited Aug. 5, 2020).  It also appears that positive cases are on the

decline in Culbreth's facility.  When Culbreth's counsel filed their brief in support of

his motion, 14 prisoners at FCI Fort Dix were listed as positive for the virus.  (Doc.

56 at 5).  That number has since dropped dramatically.  The relatively limited

presence of COVID-19 in Culbreth's facility, while not insignificant, does not mirror

the dire situations like those that previously occurred at FCI Oakdale I, which

experienced inordinately high infection and death rates in comparison to other

facilities, and justified compassionate release.  See United States v. Kelly, No. 3:13-

CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 & nn.16-17 (citations omitted).  We thus

have no objective basis to find that Culbreth is at imminent risk of being exposed to or contracting the COVID-19 virus.[5]

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks.  It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services.  See *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov /coronavirus/covid19_status.jsp (last visited Aug. 3, 2020).  Prisoner movement between facilities has been "suspended with limited exceptions."  Id.  Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones.  See id.  The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)— recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain vulnerable prisoners to home confinement.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.  The BOP reports that it has increased use of home confinement, releasing an additional 7,276 prisoners in the past three months.  Id.

---

[5] We also note that, following the completion of his federal sentence, Culbreth will be taken into state custody in Pennsylvania on a different matter. (Doc. 56 at 4 n.4).  Culbreth argues that early release is appropriate because there is "likely less of a risk" that he contract the virus in state custody.  (Id.)  We offer no opinion on the relative safety of federal versus state facilities.  However, without more, Culbreth's speculative statement that state confinement offers a safer alternative to federal confinement is insufficient to establish an "extraordinary and compelling reason[]."

The information available to us suggests that Culbreth's medical conditions, while significant, are manageable in a prison setting. Moreover, it does not appear that there is a strong likelihood that Culbreth will contract the COVID-19 virus in his facility, and BOP and FCI Fort Dix staff are working diligently to prevent such exposure from happening. On these facts, we cannot conclude that the mere presence of the COVID-19 virus at FCI Fort Dix—whether on its own or in combination with Culbreth's medical conditions—is an "extraordinary and compelling" reason for release.

### C.   Section 3553(a) Factors

Even if we were to agree that extraordinary and compelling circumstances exist, our analysis must still be informed by the Section 3553(a) factors,[6] and any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Pawlowski, No. 20-2033, ___ F.3d ___, 2020 WL 4281503, at *2 & n.6 (3d Cir. June 26, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). At sentencing, we carefully balanced the salient Section 3553(a) factors to impose a sentence that reflected the

---

[6] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution. 18 U.S.C. § 3553(a).

seriousness of the offense conduct, promoted respect for the law, achieved adequate deterrence, protected the public, and provided appropriate educational, vocational, and rehabilitative treatment to Culbreth.  <u>See</u> 18 U.S.C. § 3553(a)(2).  Weighing those factors once again, we find that the facts and circumstances of this case require that Culbreth's existing sentence remain intact.

Culbreth's conduct in this case was serious.  He was arrested after police arranged for two controlled buys of cocaine base from him.  (PSR ¶¶ 5-7).  After Culbreth was arrested, police searched the home of his associate, during which they recovered approximately 340 grams of cocaine base.  (PSR ¶ 9).  All told, Culbreth is responsible for 368 grams of cocaine base.  (<u>Id.</u>)

Culbreth's likelihood of recidivism was—and remains—a principal aggravating factor in our Section 3553(a) calculus.  Culbreth is 41 years old with a criminal record spanning more than two decades.  He has been convicted and sentenced to a term of imprisonment for drug offenses on six occasions.  (<u>Id.</u> ¶¶ 25-30).  Unfortunately, it appears that these sentences have had no deterrent effect.  Indeed, Culbreth committed the instant offense while on parole following a conviction on drug charges.  (<u>See id.</u> ¶ 30).  And this was not the first time that Culbreth has violated the conditions of his parole.  (<u>See id.</u> ¶¶ 25, 26, 27).  We thus reject counsel's suggestion that "there is no reason to think that Mr. Culbreth poses any risk of recidivism," (Doc. 55 at 7), which is squarely refuted by Culbreth's conduct in this case and others.

Accounting for good time, Culbreth still has more than 76 months remaining on his 151-month sentence.  <u>See</u> <u>Pawlowski</u>, 2020 WL 4281503, at *2 (holding that

time remaining on sentence is one factor courts may consider in compassionate-release analysis).  We commend Culbreth's educational efforts while in prison, (see Doc. 56-3), and his clean disciplinary record, (see Doc. 56-4).  And we encourage him to continue with this educational and rehabilitative programming during his remaining term of imprisonment, which will be vital to his success upon release.  See 18 USC 3553(a)(2)(D); (see also Doc. 56-3).  But, on balance, the Section 3553(a) factors support maintaining Culbreth's existing sentence.

## III.   Conclusion

We are not unsympathetic to Culbreth's concern—or to any prisoner's concern—that the COVID-19 virus has reached the federal institution where he is housed.  It is also not lost on the court that Culbreth's medical condition may expose Culbreth to an increased risk of severe illness if he contracts the virus.  But those concerns do not alone supply an "extraordinary and compelling" reasons for a sentence reduction that would have the effect of reducing Culbreth's prison term by more than seven years.  Nor do they counterbalance the aggravating Section 3553(a) factors identified above.

For all of these reasons, the court will deny Culbreth's motion for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  Mindful of the rapidly evolving nature of the COVID-19 pandemic and the potential

for hotspot outbreaks, our denial will be without prejudice to Culbreth's ability to

refile the motion.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    August 5, 2020